UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| N/A | N/A | |

**Proceedings:**   IN CHAMBERS ORDER re MOTION TO DISMISS [9]

## I.   INTRODUCTION

Plaintiffs Stephen and Deborah Carter, and their son, Matthew Rowley (collectively, "Plaintiffs") filed this action in California Superior Court against their home insurance carrier, Nationwide Insurance Company of America ("Nationwide"), and two Nationwide employees, Tracy Hanson and Lindsay Lathrum (collectively with Nationwide, "Defendants"). Plaintiffs allege that Defendants wrongfully denied and delayed insurance coverage for Plaintiffs. Specifically, Plaintiffs assert four causes of action: (1) breach of written contract against Nationwide only; (2) breach of covenants of good faith and fair dealing against Nationwide only; (3) declaratory relief against Nationwide only; and (4) intentional infliction of emotional distress ("IIED") against all Defendants. Defendants removed to this Court and filed this Motion to Dismiss the fourth cause of action. (Dkt. 9-1 at 1). Because the Court lacks subject matter jurisdiction, the Court DISMISSES the case and REMANDS to California Superior Court.

## II.   FACTUAL ALLEGATIONS[1]

Plaintiffs are residents of Riverside County, California. (Compl. ¶ 1). Nationwide is a Wisconsin corporation with its principal place of business in Iowa. (Compl. ¶ 2). Defendants Hanson and Lathrum are residents of California and work at Nationwide's Orange County office. (Compl. ¶¶ 3-4).

---

[1] On a motion to dismiss, the Court must accept as true all factual allegations and view them, along with reasonable inferences therefrom, in the light most favorable to the non-moving party. Odom v. Microsoft Corp., 486 F.3d 541, 545 (9th Cir. 2007).

:

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

Defendants issued Plaintiffs a homeowners insurance policy ("the policy") for the period of August 5, 2009 to August 5, 2010, for Plaintiffs' home. (Compl. ¶ 15).[2] Stephen and Deborah Carter were the named insureds, and Matthew Rowley was listed as an additional insured. (Compl. ¶ 18, Ex. 1 at 22).

In February 2011, water began leaking into Plaintiffs' pantry from behind a wall. In late February, Plaintiffs tendered a claim to Nationwide for the water damage to the property. (Compl. ¶ 20). Defendant Hanson, a Nationwide claims adjuster, telephoned Plaintiffs on March 3, 2011 to initiate the claims process and advised Plaintiffs to contact American Leak Detection Company to determine the source of the leak. (Compl. ¶ 21). During that conversation, Plaintiff Deborah Carter told Hanson that her son, Matthew, had a history of fungal infections. (Compl. ¶ 24 at 6:3-6). When the leak detectors visited the home later that evening, they located the leak and fixed the pipe. (Compl. ¶ 22).

On March 10, per Nationwide's request, American Environmental Group ("AEG") inspected Plaintiffs' house, taking air and swab samples for analysis of mold spore counts. (Compl. ¶ 25). On March 14, AEG issued its report to Nationwide, indicating the extent of water damage and fungal growth, and concluding that the samples revealed an elevated mold spore counts which were unacceptable and requiring remediation. (Compl. ¶ 26). Nationwide sent this report to Plaintiffs on March 23.

Meanwhile, on March 22, Plaintiff Matthew Rowley was hospitalized because he was in pulmonary distress. (Compl. ¶ 27). Rowley had a history of fungal allergies and had just underwent surgery in December 2010 to remove a fungal ball from one of his lungs. (Compl. ¶ 23). On March 29, Rowley's treating physician advised Plaintiffs to evacuate the house because there was evidence that the child's allergy had worsened from exposure to mold. That evening, Deborah Carter related this advice to Defendant Hanson, who agreed that the family should vacate the house, but advised she would be unable to make arrangements for alternative lodging because she was "off work." (Compl. ¶ 28). That night, the family relocated to a local Marriot hotel room for $330 per night.

On March 30, Defendant Hanson, with the approval of her supervisor, Defendant Lathrum, issued Plaintiffs a letter regarding the "Coverage D - Loss of Use" provision of their homeowners policy. (Compl., Ex. 4). The letter did not mention any specific dollar cap on the loss of use coverage,

---

[2] The Complaint oddly does not allege any events occurring before August 5, 2010 that would support Nationwide's liability. However, the Court declines to address this because the parties have not raised the issue and it would be unnecessary given the Court's disposition.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

and expressly stated, "We will reimburse you for similar temporary housing expenses, such as rent or hotel." (Compl., Ex. 4 at 108).

Three weeks later, on April 20, 2012, Nationwide asked AEG to conduct further mold tests. On April 28, Defendant Hanson, with the approval of Defendant Lathrum, issued another letter to Plaintiffs stating that Nationwide would pay for the mold abatement and alternate lodging theretofore, but would not cover any further lodging because Plaintiffs' hotel expenses already had exceeded the $10,000 limit for all costs related to fungi or bacterial losses. (Compl., Ex. 5 at 112). The letter explains that this cap is set forth in Fungi Endorsement No. 12747 of the policy. (Compl., Ex. 1 at 66). No longer able to afford staying at a hotel, Plaintiffs moved back home. (Compl. ¶ 33).

On May 12, Defendant Hanson, with the approval of Defendant Lathrum, sent Plaintiffs a check for $2,503 to pay for the water damage to the house, presumably under a separate coverage provision. (Compl. ¶ 34). Hanson and Lathrum also sent a second letter explaining how to request payments for actual repairs pursuant to the policy's "repairment cost" provision. (Compl., Ex. 9 at 125) ("We will then reimburse you according to the replacement provision").

On June 13, Plaintiffs' lawyers advised Defendants that Plaintiffs were disputing Nationwide's adjustment of water damage and mold repairs. Nationwide issued a declination letter stating that the loss had been paid in full. (Compl. ¶ 39). As a result, Plaintiffs were unable to complete repairs until July 14, 2011. Defendants never paid for the mold remediation as promised in the April 28 letter.

After returning home, but before the repairs were completed, Matthew Rowley went to the hospital twice, from May 4-7 and from June 18-22, for pulmonary distress due to mold exposure. Plaintiffs further allege that this period of exposure contributed to Rowley's need to have yet another surgery in January 2012 due to scarring in his lungs from exposure to mold. (Compl. ¶ 40). These events, together with the denial of coverage, caused Plaintiffs to suffer severe emotional distress. (Compl. ¶¶ 45, 54, 62). Plaintiffs then filed this action.

### III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. By contrast, a complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. The

                                                                                    :
                                              Initials of Preparer           PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

Court reads the complaint in the light most favorable to the non-moving party. "Allegations in the complaint, together with reasonable inference therefrom, are assumed to be true for purposes of the motion." Odom v. Microsoft Corp., 486 F.3d 541, 545 (9th Cir. 2007).

//
//

### IV. DISCUSSION

#### A. Jurisdiction

Before the Court may reach the merits of the Motion to Dismiss, it first must address the glaring problem of jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (internal quotation marks omitted). A federal court must examine its subject matter jurisdiction whether or not the parties raise the issue. See United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments.").

Moreover, where a case has been removed, the Court may remand for lack of subject matter jurisdiction at any time before final judgment. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). The court must remand an action sua sponte if it determines that it lacks subject matter jurisdiction. See Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir.2003) ("[W]e have held that the district court must remand if it lacks jurisdiction."); Thiara v. Kiernan, No. C06–03503 MJJ, 2006 WL 3065568, at *2 (N.D. Cal. Oct. 25, 2006) ("A district court has an independent obligation to examine whether removal jurisdiction exists before deciding any issue on the merits."). The Court strictly construes the removal statute against removal jurisdiction; federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The burden to establish jurisdiction rests with removing party. Id.

Jurisdiction in this case is based exclusively on diversity of citizenship. 28 U.S.C. § 1332(a). It is axiomatic that diversity jurisdiction requires complete diversity. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch.) 267 (1806). Here, Plaintiff and Defendants Hanson and Lathrum are domiciled in California. However, "fraudulently joined defendants will not defeat removal on diversity grounds." Ritchey v.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) (internal citation omitted). Taking this tack, Defendants suggested in their Notice of Removal that Defendants Hanson and Lathrum should not be considered for diversity purposes because they are fraudulent joined. (Not. of Removal ¶ 11). To determine if diversity jurisdiction exists, the Court first must decide whether Hanson and Lathrum are sham defendants.

### B.     Fraudulent Joinder

Fraudulent joinder "is a term of art" used to describe a non-diverse defendant who has been joined to an action for the sole purpose of defeating diversity. McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). To prove fraudulent joinder, the defendant must establish that the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.2001) (citing McCabe, 811 F.2d at 1339). Because of the presumption against removal, a defendant must prove fraudulent joinder by clear and convincing evidence, Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206 (9th Cir. 2007), and "all disputed questions of fact and all ambiguities in the controlling state law are [to be] resolved in plaintiff's favor," Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1176 (N.D. Cal. 2003). Thus, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).

To be clear, demonstrating fraudulent joinder requires more than merely showing that plaintiff has failed to state a claim for relief. See Mireles v. Wells Fargo Bank, N.A., 845 F. Supp. 2d 1034, 1063 (C.D. Cal. 2012) (citing Latino v. Wells Fargo Bank, N.A., No. 11–cv–02037, 2011 WL 4928880, at *3 (E.D. Cal. Oct. 17, 2011)). "'In the Ninth Circuit, a non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could *not possibly recover* against the party whose joinder is questioned.'" Id. (quoting Sun v. Bank of Am. Corp., No. 10–0004 AG (MLGx), 2010 WL 454720, at *3 (C.D. Cal. Feb. 8, 2010)) (emphasis added). To establish fraudulent joinder, "Defendants must show that the relevant state law is so well settled that plaintiff 'would not be afforded leave to amend his complaint to cure th[e] purported deficiency.'" Id. (quoting Burris v. AT & T Wireless, Inc., No. 06–02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. Jul. 19, 2006).

Defendants argue that the IIED claim against Hanson and Lathrum obviously fails for two reasons. First, they argue that Hanson and Lathrum cannot be liable as a matter of law because they were agents acting within the scope of employment with Nationwide. Second, Defendants argue that the allegations are insufficient as a matter of law to support an IIED claim. The Court first addresses

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

whether the agency privilege applies, because a determination in Defendants' favor would obviate the second issue.

        1.        Scope of Agents' Duty under California Law

In applying California law, the Court "must apply the law as it believes the California Supreme Court would apply it." Gravquick A/S v. Trimble Navigation Int'l, Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003). "In the absence of a controlling California Supreme Court decision, the [Court] must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." Id.

Defendants argue that Hanson and Lathrum cannot be liable because they were agents acting within the scope of their employment with Nationwide. As a general rule, an agent acting in the principal's name cannot be held individually liable as a defendant unless she acts outside the scope of employment. Lippert v. Bailey, 50 Cal. Rptr. 478, 481–82 (Ct. App. 1966). However, California law recognizes certain exceptions to the rule. Though these exceptions are not well settled under California law, e.g., Hudgens v. N.Y. Life Ins. Co., No. CV 08-08550 MMM (RCx), 2009 WL 782312, at *3 (C.D. Cal. Mar. 17, 2009), they fall into three general categories.

First, the "dual agency" exception applies where an insurance agent "act[s] on behalf of the insured in some way beyond his or her capacity as an agent for the insurer." Good v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 808 (N.D. Cal. 1998) (construing California law). This typically arises where the agent is an independent broker or has a long-term, special relationship with the insured. Id.

Second, the "special duty" exception holds that when the agent answers an insured's inquiry or otherwise makes an affirmative representation, the agent has "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy." Paper Savers Inc. v. Nasca, 59 Cal. Rptr. 2d 547, 551 (Ct. App. 1996) (internal citation and quotation marks omitted). For instance, California courts have held agents personally liable for negligent misrepresentations in the following situations:

> (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided, (b) there is a request or inquiry by the insured for a particular type or extent of coverage, or (c) the agent assumes an additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

# JS - 6

Fitzpatrick v. Hayes, 67 Cal. Rptr. 2d 445, 452 (Ct. App. 1997) (collecting cases of each scenario); see also Hudgens, 2009 WL 782312 at *3; Smith v. AllState Ins. Co., No. C 10–0407 SI, 2010 WL 2510117, at *3 (N.D. Cal. June 17, 2010); Clement v. Smith, 19 Cal. Rptr. 2d 676, 679 (Ct. App. 1993) ("Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions. This is particularly true in view of the understandable reluctance of an insured to commence a study of the policy terms where even the courts have recognized that few if any terms of an insurance policy can be clearly and completely understood by persons untrained in insurance law.").

Notably, this special duty pertains to omissions as well. In Westrick v. State Farm Ins., 187 Cal. Rptr. 214, 218-19 (Ct. App. 1982), the court held that where the plaintiff bought insurance relying on the insurance agent's assurance that his vehicles would be covered, the agent was liable for his negligent failure to mention a provision excluding the plaintiff's six-wheeler truck.

Third, a more remote line of cases hold that "'[a]n agent or employee is always liable for his own torts, whether his employer is liable or not.'" Holt v. Booth, 2 Cal. Rptr. 2d 727, 730 n.5 (Ct. App. 1991) (citing 5 Witkin, Summary of Cal. Law § 32 (9th ed. 1988)). Accordingly, insurance agents may be held personally liable for intentional misrepresentation or fraud. See McNeill v. State Farm Life Ins. Co., 10 Cal. Rptr. 3d 675, 679 (2004).

Here, the factual allegations permit a reasonable inference that Defendants Hanson and Lathrum assumed a special duty to Plaintiffs when they made affirmative representations about Plaintiffs' coverage. For example, Hanson and Lathrum's March 29th letter expressly stated, "We will reimburse you for similar temporary housing expenses, such as rent or hotel." (Compl., Ex. 4 at 108). Yet the letter did not mention the $10,000 cap. Under Westrick, the Court can plausibly infer that Defendants had a duty to reasonably apprise Plaintiffs of the terms of their coverage. Moreover, taking the allegations as true, Defendants made at least two affirmative misrepresentations. Defendants' April 28th letter plainly stated that Nationwide would pay for the mold abatement. (Compl., Ex. 4 at 108). Similarly, the May 12th letter expressly stated that once Plaintiffs submitted their receipts, Nationwide "will then reimburse you according to the replacement provision." (Compl., Ex. 9). It appears from the allegations that Nationwide has done neither. Because the allegations suggest that Defendants Hanson and Lathrum breached their special duty to Plaintiffs, they may be held liable despite their agency status.

The Ninth Circuit's decision in Mercado v. Allstate Ins. Co., 340 F.3d 824, 826 (9th Cir. 2003), does not require a different result. Defendants read Mercado to mean that an agent can be personally liable only if she was acting as a dual agent or for her personal benefit. In other words, Defendants

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

suggest that the special duty exception does not exist in California. However, <u>Mercado</u> does not bear such a narrow reading. The case focused only on the dual agency exception, and concluded that it did not apply because the agent did not take on any additional duties for the insured. <u>Id.</u> at 826 n.1. Thus, <u>Mercado</u> had no occasion to consider the "special duty" exception, much less decide on its continuing force in California law. In sum, because Hanson and Lathrum are not shielded from liability as a matter of law, this does not support a finding of fraudulent joinder.

    2.    <u>Sufficiency of Allegations of IIED</u>

Defendants next argue that even if Hanson and Lathrum are vulnerable to liability, the facts alleged in the Complaint fail to state a claim of IIED. However, the proper inquiry in the context of fraudulent joined is not whether the facts pled would survive a Rule 12(b)(6) motion, but whether the Complaint "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." <u>Morris</u>, 236 F.3d at 1067 (internal quotation marks omitted).

To state a prima facie IIED claim, Plaintiffs must show (1) the insurer's extreme and outrageous conduct that is directed at the insured, (2) the intention to cause, or acting in conscious disregard of the probability of causing, emotional distress, (3) the insured suffered severe emotional distress, (4) actual and proximate cause of the emotional distress, and (5) consequential damages caused by the emotional distress. <u>Christensen v. Superior Court</u>, 820 P.2d 181, 202 (Cal. 1991). "[B]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." <u>Bogard v. Employers Cas. Co.</u>, 210 Cal. Rptr. 578, 587 (Ct. App. 1985) (internal quotation marks omitted). In <u>Bogard</u>, the plaintiffs were sued after their dog bit a young girl. The plaintiffs tendered the defense of that lawsuit to their homeowner's insurance provider. <u>Id.</u> at 580. The court held that insurance company acted outrageously and abused its power when it informed plaintiffs at the settlement stage (1) that their interests were not represented by counsel hired by the insurer; and (2) that they should seek independent counsel on their own dime. <u>Id.</u> at 587-88.

On the other hand, mere "delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." <u>Coleman v. Republic Indemn. Ins. Co. of Calif.</u>, 33 Cal. Rptr. 3d 744, 753 (Ct. App. 2005). For example, in <u>Ricard v. Pacific Indemnity Co.</u>, 183 Cal. Rptr. 502 (Ct. App. 1982), the court determined that allegations that the insurer intentionally delayed eight months and refused to properly investigate a claim did not state a claim for outrageous conduct that could survive demurrer. <u>Id.</u> at 503-04, 506-07.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:12-CV-01356-SVW-OP | Date | September 25, 2012 |
|---|---|---|---|
| Title | Stephen Carter et al. v. Nationwide Ins. et al. | | |

JS - 6

The instant pleadings, however, set forth facts that suggest Defendants' inaction was more than mere delay and denial of a claim. Plaintiffs informed Defendants on March 3rd that their son had a history of fungal infections. Yet when Defendants received AEG's March 14th report that the mold exposure was "unacceptable, requiring remediation," they waited a week before informing Plaintiffs. (Compl. ¶ 26). On March 29th, Plaintiffs shared with Defendant Hanson the doctor's order that the family evacuate the house because the elevated spore count had exacerbated Matthew's condition. Yet for reasons unknown, Defendants delayed three weeks to perform additional mold tests, and waited an additional week to inform Plaintiffs for the first time that their loss-of-use coverage was capped at $10,000, and that their month-long stay at the hotel had exhausted that coverage. Plaintiffs had no choice but to return home. Then in June, Defendants refused to cover the mold abatement after promising to do so. Lacking financial resources, Plaintiffs could not complete repairs until July. In the interim, Matthew was hospitalized twice for exposure to mold.

Viewing these allegations in Plaintiffs' favor, the Court concludes that Defendants knew that Plaintiff Matthew Rowley was particularly susceptible to emotional distress because of his allergies to mold, and that his parents would be distressed by his condition as well. Further, Defendants were arguably in a position of power as they had the ability to dictate the schedule, for example, by waiting a month to confirm the investigation and begin the repair process. In addition, Defendants knew that declining to repair the mold, despite their prior assurances to do so, would cause Matthew and his parents to continue to suffer emotional distress. In sum, a colorable argument can be made that Defendants delayed repairing the mold while permitting Plaintiffs to exhaust their loss-of-use coverage, all in conscious disregard of the fact that Plaintiffs would be forced to return home and suffer severe emotional distress. In light of the foregoing, the Court cannot say that Plaintiffs cannot possibly recover against Defendants for intentional infliction of emotional distress. Accordingly, Defendants Hanson and Lathrum are possibly susceptible to liability and thus are not fraudulently joined. Their presence in this action therefore destroys diversity of citizenship. Because the Court lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co., 523 U.S. at 94.

**V.    CONCLUSION**

For the reasons above, the Court DISMISSES the case and REMANDS the action to the California Superior Court.

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |